IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT GODEC, | ) | CASE NO. 1:15 CV 1749 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Robert Thomas Godec under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Godec, who was forty-four years old at the time of the administrative hearing,[11] has a ninth grade education,[12] is not married, and lives with a roommate.[13] He was last employed in 2011, as a pool security guard.[14] Before that he worked as a telemarketer.[15]

---

[5] ECF # 6.

[6] ECF # 10.

[7] ECF # 20 (Commissioner's brief); ECF # 13 (Godec's brief).

[8] ECF # 20-1 (Commissioner's charts); ECF # 13-2 (Godec's charts).

[9] ECF # 13-1 (Godec's fact sheet).

[10] ECF # 24.

[11] ECF # 9, Transcript ("Tr.") at 39.

[12] *Id*. at 42-43.

[13] *Id*. at 225-226.

[14] *Id*. at 45.

[15] *Id*. at 44.

The ALJ, whose decision became the final decision of the Commissioner, found that Godec had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and depression (20 C.F.R §404.1520(C) and §416.920(C)).[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Godec's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and up to ten pounds frequently and to stand or walk for up to four hours total in an eight hour workday with the option to change positions between sitting and standing at will about once every 30 minutes without leaving the workstation. This is consistent with a slightly reduced range of light exertional activity as 20 C.F.R. §404.1567(b) and §416.967(b) define that term (SSR 83-12). In addition, the claimant can no more than frequently reach or handle with his left, non-dominant upper extremity, he can no more than occasionally stoop, kneel, crouch, or climb ramps or stairs, he can never crawl or climb ladders, ropes, or scaffolds, and he can perform simple to moderately complex tasks with no fast paced work, no strict production quotas, and occasional changes in the work setting.[17]

Based on that residual functional capacity, the ALJ found Godec capable of his past relevant work as hotel pool security guard.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Godec could perform. The ALJ, therefore, found Godec not under a disability.

---

[16] *Id.* at 15.

[17] *Id.* at 18.

[18] *Id.* at 25.

**B.	Issues on judicial review**

Godec asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Godec presents the following issues for judicial review:[19]

- The ALJ found at Step 4 of the sequential evaluation that Mr. Godec was not disabled because he was capable of performing his past relevant work as a hotel pool security guard, or, alternatively, at Step 5 of the sequential evaluation because he was capable of performing other work. This finding lacks support of substantial evidence because:

    1. The residual functional capacity failed to accurately portray all of the functional limitations impose by Mr. Godec's impairments including his incontinence and his inability to perform ongoing and recurring employment as required by SSR96-8p.

    2. The ALJ failed to properly evaluate the medical opinions of record including that of the treating physician according to law and that of SSR 96-2p.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[19] ECF # 13 at 2.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.     *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.    Application of standards**

At the oral argument in this case Godec's counsel agreed that the issues in this case are whether urinary incontinence should have been recognized as a severe impairment and whether limitations related to urinary incontinence should have been incorporated into the RFC. I consider those interrelated questions below.

As to whether incontinence should have been included as a severe impairment at Step Two, Godec's treating physician, Dr. Antony George, M.D., does not mention urinary incontinence in either his August 2012 functional opinion given to the child support authorities,[71] nor in his more detailed 2013 functional opinion completed for social security purposes.[72]

Godec essentially concedes this point, but argues that the ALJ erred by incorrectly finding that Godec had not complained to his treating physician about this condition,[73] and further erred by "playing doctor" and attributing any urinary incontinence to neurological

---

[70] *Id.* at 940.

[71] Tr. 662.

[72] *Id*. at 604-13.

[73] ECF # 13 at14.

-14-

emergency related to his lumbar disc disease.[74] He further points to his own his own testimony at the hearing that the urinary incontinence, and need to urgently urinate, requires him to use the restroom up to 15 times a day on an at will basis,[75] such as would preclude full-time employment.[76]

The treatment notes show that Godec discussed urinary incontinence with Dr. George several times;[77] mentioned having "episodes of difficulty" with urination to Dr. Nicholas Bambakidis, M.D., a neurologist;[78] and that he told Dr. Naomi Waldbaum, a consultive examining physician, in 2012 that he "had been leaking urine" since his surgery.[79] Moreover, there is no dispute that Godec testified to needing to urgently and frequently use the restroom.

But, it remains true that no medical source opinion characterized this condition as a severe impairment. Moreover, although Godec is correct that the ALJ misstated the record concerning the existence and frequency of complaints to various medical sources about urinary incontinence, it also is true that these complaints, and Godec's testimony, do not

---

[74] *Id*. at 15.

[75] Tr. at 57.

[76] *Id*. at 79-81.

[77] *See, id*. at 558, 564 (urinary incontinence "on and off"), 566 ("some" urinary incontinence).

[78] *Id*. at 552.

[79] *Id.* at 538.

establish the existence of a severe impairment, particularly where no medical opinion exists in the record to support that conclusion. Further, the relatively infrequent notations to urinary issues in Dr. George's treatment notes, as well as language characterizing Godec's urinary problem as "episodes of difficulty" and "leaking urine," do not compel the conclusion that the ALJ significantly misread the record in determining that the claim of severe urinary incontinence was not supported by the evidence.[80]

The ALJ here could have more accurately stated and analyzed the record in this regard.[81] The ALJ's conjecture that any urinary incontinence was due to "a neurological emergency" was also not helpful to careful formulation of the reasoning as to why this condition was not a severe impairment.[82] Although it also would have been helpful for the ALJ to specifically address Godec's testimony about the purported limitations of his urinary condition, I do note that the ALJ otherwise extensively discussed how Godec's activities suggest that he retains greater functional ability than he alleges, and that his credibility is questioned in numerous ways.[83]

---

[80] *Id*. at 15.

[81] I note in this regard that there is no heightened standard of articulation required for step two analysis. The rule at step two is that the ALJ must determine if an impairment or combination of impairments significantly limits the claimant's mental or physical ability to do basic work activities. *Van Der Maas v. Commissioner*, 198 Fed. App'x 521, 527 (6th Cir. 2006). In so doing, the ALJ need not consider or discuss every piece of relevant evidence if what evidence that was analyzed was "substantial." *Id.* at 526.

[82] Tr. at 15.

[83] *Id*. at 21.

-16-

Accordingly, although it was not a textbook example of analytic reasoning, substantial evidence supports the decision at step two that Godec had no severe impairment of urinary incontinence.  It is the claimant who has the burden of proof at step two, and in the absence of a medical source statement to the contrary, there is no basis in this record by which to reverse the ALJ's decision in this regard.

Finally, Godec argues that the ALJ did not provide good reasons for discounting the weight given to the two opinions from Dr. George.[84]

Godec notes in both instances that the ALJ failed to conduct the required two-step analysis as required by the regulation and by case authority, but "immediately went to reasons which did not amount to good reasons."[85]  As I have frequently noted, and has been explicitly stated by the Sixth Circuit, the collapsing of the two-step analysis into a single inquiry is not permitted. But, as the recent weight of case authority unmistakably shows, this approach is often found acceptable if the reasons stated are good reasons, such as would make a remand a mere formality.

Here, the ALJ gave little weight to the 2012 opinion that Godec had severe restrictions on his ability to stand, sit, walk, bend, stoop, push, pull or reach, and that Godec needed frequent breaks and the ability to change positions at will.[86]  The ALJ noted that Dr. George found that the basis for his restrictive opinion was that Godec needed treatment, but the ALJ

---

[84] *Id*. at 16-21.

[85] *Id*. at 19.

[86] *Id*. at 22.

-17-

accordingly downgraded the weight attributable to that opinion by noting that Dr. George continued with the "much the same" treatment he had been providing to Godec since 2008–a period of time when Godec was able to work.[87] The ALJ then noted that the remark about the need to change positions was consistent with the record and so would be incorporated into the RFC.[88]

Godec contends that these were not good reasons because Dr. George did recommend or implement new treatment, including recommendations for a specialist.[89] But, that said, the ALJ is correct in noting that despite "some" treatment changes, most of the treatment was continuous since 2008, and that Godec had been working in this period.[90]

I find that the reasons for the lesser weight given to this opinion were good reasons. First, the ALJ was careful to credit the portion of the opinion that was supported by the record and to incorporate that finding into the RFC. Then, the ALJ properly observed that if the other restrictive aspects to the opinion were because Godec had untreated conditions, that opinion is undermined because Dr. George's treatment protocol for Godec was "much the same" after 2008, during which period Godec was still able to work.

Likewise, the decision to give some weight to the 2013 opinion is also supported by substantial evidence. As with the earlier opinion, the ALJ is careful to find that Dr. George's

---

[87] *Id.*

[88] *Id.*

[89] ECF # 13 at 19.

[90] Tr. at 22.

opinion is "generally consistent with the record."[91] The ALJ then also noted that Godec's ability to work for some months as a pool security guard shows that Godec has "somewhat greater" capacity for exertion than is suggested in the opinion, and that while Godec's left ulnar nerve symptom might reasonably produce some limitations, there is no objective clinical or diagnostic findings to support more significant limitations.[92]

Godec now argues that any reference to his work history as a pool security guard is flawed because there is no analysis of what specific physical or mental requirement were imposed by this job, and whether those requirements were involved with the particular limitations set forth by Dr. George.[93] This argument has some merit. But, as the Commissioner observes, the ALJ had previously discussed in some detail the objective evidence that undermined Dr. George's opinion.[94] These findings - that arm strength was 5/5, that Godec had normal range of motion in his joints and that 2009 and 2012 MRIs both

---

[91] *Id*.

[92] *Id.*

[93] ECF # 13 at 20. Although the ALJ made a finding at step four that Godec could perform his past relevant work as a pool security guard "in the manner which he actually performed such work in the past," (Tr. at 26) he went on to find at step five the other jobs that exist in substantial numbers in the national economy that Godec can perform given his RFC (*id*. at 26-28). Given this alternative finding, and error in the past relevant work finding is harmless error. *Pechatsko v. Commissioner of Social Security*, 369 F. Supp.2d 909 (N.D. Ohio 2004).

[94] ECF # 20 at 18.

showed that Godec's degenerative back disease was stable post-surgery[95] – all support the determination that Dr. George's 2013 opinion was entitled to some weight.

Although it would have been better if the ALJ had incorporated these observations as to functional limitations into the discussion concerning Dr. George's opinion, there is no doubt that the ALJ made these findings on the record in the body of the opinion. As such, they are not the *post hoc* justifications of the Commissioner's counsel. Accordingly, I find that substantial evidence supports the weight assigned to this opinion.

## Conclusion

For the reasons stated, I find that substantial evidence supports the decision of the Commissioner, and that this decision is hereby affirmed.

IT IS SO ORDERED.

Dated: July 15, 2016    s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[95] *Id*. (citing record).